UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK T. ANDREWS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CONSUMER AFFAIRS, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-00252-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Dkt. Nos. 13, 17, 21, 23 |

## INTRODUCTION

Plaintiff Mark Andrews alleges that his Fourteenth and Fifth Amendment rights were violated when he was denied an administrative hearing regarding the suspension of his California Driver's License and California Bureau of Automotive Repair License, in connection with Child Support Proceedings in California Superior Court. He brings § 1983 claims against the California Department of Consumer Affairs, which includes the California Bureau of Automotive Repair; the California Department of Motor Vehicles ("DMV"); the Sonoma County Department of Child Support Services ("DCSS"); Kirk Gorman, an attorney for the Department of Child Support Services, Kathy Simon, a case worker for Child Support Services, and Superior Court Commissioner Louise Bayles-Fightmaster. First Amended Complaint ("FAC") (Dkt. No. 8). The defendants have filed four different motions to dismiss his claims on numerous grounds, including that this court lacks jurisdiction to hear his claims under the *Rooker-Feldman* doctrine. Because I conclude that Andrews's claims are barred by the *Rooker-Feldman* doctrine and this court lacks jurisdiction to hear them, the defendants' motions to dismiss are GRANTED.

## BACKGROUND

At some point prior to May, 2013, Andrews was held in contempt of court for failure to

make court-ordered child support payments. *See* FAC ¶¶ 20, 26. On May 19, 2013, he received a notice from the California Bureau of Automotive Repair ("BAR"), stating that his license to pursue a private occupation would be suspended, effective on June 23, 2013, pursuant to Family Code § 17520 and an order from the DCSS. *Id.* ¶ 17. On June 14, 2013 he received a notice from the DMV, stating that his driver's license would be suspended, effective July 14, 2013, pursuant to Family Code § 17520 and a DCSS order. *Id.* ¶ 18.

On June 26, 2013, Andrews sent a letter to DCSS, requesting an administrative hearing regarding the suspensions of his BAR and DMV licenses. *Id.* ¶ 19. DCSS refused to file an appeal with the Office of Administrative Hearings. *Id.* ¶ 20. DCSS held multiple hearings to find Andrews in contempt of court, but no appeal hearing was held regarding the suspension of his licenses. *Id.*

On September 18, 2013, Andrews asked Commissioner Louise Bayles-Fightmaster to return his licenses. *Id.* ¶ 21. She told Andrews that he was not entitled to a hearing under the child support laws. *Id.* She further told him that no one had received a notice of any request for a hearing. *Id.* Kirk Gorman, the attorney for DCSS, did not inform Commissioner Bayles-Fightmaster that DCSS had received a letter requesting an appeal from Andrews. *Id.* ¶ 22. Kathy Simon, a DCSS caseworker, was also aware of the letter. *Id.* ¶ 23.

Over the next six months multiple hearings were held in Andrews's child support case. *Id.* ¶ 25. Kirk Gorman told Andrews and his attorney that "if you want a hearing on the license suspension, file a motion." *Id.* It appears that Andrews did not file a motion.

On February 19, 2014, Gorman told Andrews that, to get his licenses back and avoid jail time, he could either pay full child support arrearage or plead guilty to three counts of contempt, pay $500 immediately, and agree to pay $125 per month. *Id.* ¶ 26. Andrews's attorney, Wallace Coppock, told Andrews that if he pleaded guilty he could get his licenses back that day and still "argue this issue of due process and the fraud upon the court committed by Commissioner Louise Bayles Fightmaster and Attorney Kirk Gorman." *Id.* ¶ 27. Andrews alleges that he pleaded guilty "under duress" to get his licenses back. *Id.* His licenses were returned two weeks later, on March 3, 2014. *Id.* ¶ 28.

Andrews asserts that his due process rights were violated because his licenses were not returned to him on September 18, 2013, when he requested them before Commissioner Bayles-Fightmaster. *Id.* ¶ 29. He contends that Bayles-Fightmaster denied him a fair hearing in violation of his Fourteenth and Fifth Amendment rights. *Id.* ¶ 30. He contends that DCSS similarly violated these rights by refusing to hold an appeals hearing before taking away his licenses. *Id.* ¶ 32. He contends that Kirk Gorman contributed to his injuries by failing to inform Commissioner Bayles-Fightmaster that Andrews had submitted a request for an appeal to DCSS and that Kathy Simon "was complicit in the intentional damage to Plaintiff" because she was also aware of the letter. *Id.* ¶¶ 22, 23.

Andrews brings § 1983 claims against the defendants seeking to redress these injuries. He seeks a declaratory judgment that he was unconstitutionally denied his due process rights to a fair hearing, $100 million in damages, and attorney's fees and costs.

## LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

3

**DISCUSSION**

**I.    *ROOKER-FELDMAN* DOCTRINE**

The defendants move to dismiss Andrews's claims under the *Rooker-Feldman* doctrine, which prohibits federal courts from hearing de facto appeals of state court decisions. *See Noel v. Hall*, 241, F.3d 1148, 1163-1164 (9th Cir. 2003). Lower federal courts lack subject matter jurisdiction to hear appeals from state court decisions, meaning that they lack the legal authority to hear such cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). "[W]hen the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court" his claims are barred under *Rooker-Feldman*. *Id.* "This doctrine applies even when the challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). The *Rooker-Feldman* doctrine applies to all state court proceedings that have "ended," which means that "the state courts [have] finally resolve[d] the issue that the federal court plaintiff seeks to re-litigate in a federal forum, even if other issues remain pending at the state level." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005).

*Rooker-Feldman* does not prohibit a plaintiff from challenging a generally applicable state rule, statute, or procedure on federal or constitutional grounds. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 466 (1983). For example, a plaintiff might bring a claim asserting that a particular state procedural rule does not provide adequate due process as required by the Fifth and Fourteenth Amendments. However, the *Rooker-Feldman* doctrine does bar "challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486. This means that a plaintiff cannot bring a claim alleging that the particular state rules and procedures were not followed in a certain state court proceeding. *See Mothershed*, 410 F.3d at 607 (claim that defendant "denied [plaintiff] due process" because it "did not hold its hearing within the thirty-to-sixty day time frame required by" state disciplinary proceeding rules was barred by *Rooker-Feldman*).

Andrews alleges that his due process rights were violated because he was not provided with a hearing in state court on the suspension of his licenses, which he asserts he was entitled to

under state law. At oral argument on these motions to dismiss, Andrews emphasized again that he was not given any hearing in state court. I understand Andrews's claim and, for the purpose of these motions, take his allegations as true. However, this type of claim, alleging that the procedures and process were inadequate in a particular state court proceeding, falls squarely under *Rooker-Feldman*, *See Mothershed*, 410 F.3d at 607.

Further, the state court proceedings have "ended" as far as Andrews's suspended licenses are concerned. As Andrews alleges, his licenses were suspended pursuant to Family Code § 17520, which requires local child support services offices to submit the names of individuals who have failed to comply with their child support obligations to a "certified list" that is sent to all State licensing boards and which is used to suspend and revoke the licenses of any listed individuals. FC § 17520(6)(b). The proceedings regarding Andrews's license suspensions ended when he pleaded guilty to three counts of contempt for failing to comply with his child support obligations. By pleading guilty, Andrews legally admitted that he was out-of-compliance with his child support obligations and indirectly admitted that DCSS did not make a mistake by submitting his name to the certified list. His licenses were also released back to him following his plea and there are no unresolved issues regarding the license suspensions pending in state court. I realize that Andrews's lawyer told him that he could plead guilty and continue to litigate his due process issues, but that advice was wrong if the lawyer meant that Andrews could pursue these claims in federal court. For the purposes of *Rooker-Feldman*, the proceedings regarding the suspension of Andrews's licenses "ended" with his guilty plea.

In his opposition, Andrews argues that the *Rooker-Feldman* doctrine does not apply "because the facts of the underlying state court case establish that Plaintiff did not have a full opportunity to argue his claim on appeal." Opposition to Bayles-Fightmaster Motion to Dismiss at 6 (Dkt. No. 28). For these motions I take the pleadings as true and presume that he was not given a fair opportunity to appeal this issue in state court. However, for the purposes of *Rooker-Feldman* it does not matter whether Andrews had a full and fair opportunity to argue his claim on appeal. This court simply cannot review the adequacy of a particular state court proceeding, no matter how unfair or inadequate those proceedings allegedly were.

Because the relevant proceedings in state court have ended, and Andrews seeks to challenge the adequacy of procedures and process he was given in his particular state court proceeding, the claims he has raised here fall under *Rooker-Feldman* and this court lacks subject matter jurisdiction to hear them. For this reason, Andrews's claims must be DISMISSED.

## II.     OTHER POTENTIAL GROUNDS FOR DISMISSAL

The defendants have raised a number of other compelling grounds for dismissal. For example, Andrews's claims appear barred by the statute of limitations. Section 1983 claims are subject to the state's statute of limitations for personal injury torts. *See Owens v. Okure*, 488 U.S. 235 (1989) (section 1983 claims are governed by the state's statute of limitations for personal injury torts); *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (applying California's statute of limitations for personal injury actions). In California, the current statute of limitations for personal injury torts is two years. *See* C.C.C.P § 335.1. Because Andrews's claims all relate to events that took place in March, 2014 and before, and this case was not filed until 2017, his claims are barred by the statute of limitations.

In addition, the California defendants note that, as State agencies, the Eleventh Amendment protects them from § 1983 suits in federal court. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Further, Defendant Bayles-Fightmaster is entitled to absolute judicial immunity for actions taken in the course of her official duties as a judicial officer. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction.").

These are only some of the other plausible grounds for dismissal that the defendants have raised. I am skeptical that Andrews can successfully address these barriers to his lawsuit, but given Federal Rule of Civil Procedure 15's liberal amendment standard, he will have leave to do so.

## CONCLUSION

While I understand that Andrews is frustrated and feels he was not given a fair chance to appeal his license suspensions in state court, the *Rooker-Feldman* doctrine prevents this court

6

from hearing his claims and granting him the relief he seeks.  Because I lack jurisdiction to review Andrews's claims, the defendants' motions to dismiss are GRANTED.  Andrews is granted leave to amend within 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: September 5, 2017

William H. Orrick
United States District Judge