UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK T. ANDREWS,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CONSUMER AFFAIRS, et al.,<br><br>    Defendants. | Case No. 17-cv-00252-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff Mark Andrews brings several claims related to the suspension of his California driver's license and California Bureau of Automotive repair license in connection with child support proceedings in California Superior Court, County of Sonoma, against the California Department of Consumer Affairs, which includes the California Bureau of Automotive Repair ("BAR") and the California Department of Motor Vehicles ("DMV"), the Sonoma County Department of Child Support Services ("DCSS"), Kirk Gorman, an attorney for the DCSS, Kathy Simon, a case worker for DCSS, and Superior Court Commissioner Louise Bayles-Fightmaster, who presided over his child support matter. Second Amended Complaint ("SAC") (Dkt. No. 47). I am deprived of jurisdiction under the *Rooker-Feldman* doctrine because Andrews's case has been decided in state court and should have been pursued there if Andrews was dissatisfied with the results. For the reasons discussed below, the defendants' motions to dismiss are GRANTED.

## BACKGROUND

At some point prior to May 2013, Andrews was held in contempt of court for failure to make court-ordered child support payments. *See* SAC ¶¶ 22, 29. As a result, on May 19, 2013, he received a notice from the BAR, stating that his license to pursue a private occupation would be

suspended, effective on June 23, 2013, pursuant to Family Code § 17520 and an order from the DCSS. *Id.* ¶ 19. On June 14, 2013, he also received a notice from the DMV, stating that his driver's license would be suspended, effective July 14, 2013, pursuant to Family Code § 17520 and a DCSS order. *Id.* ¶ 20.

On June 26, 2013, Andrews sent a letter to DCSS, requesting an administrative hearing regarding the suspensions of his BAR and DMV licenses. *Id.* ¶ 21. DCSS. *Id.* ¶ 22. DCSS held multiple hearings to find Andrews in contempt of court for failure to pay child support. It refused to file an appeal with the Office of Administrative Hearings regarding the suspension of his licenses. *Id.*

On September 18, 2013, Andrews asked Commissioner Bayles-Fightmaster to return his licenses. *Id.* ¶ 23. She told Andrews that he was not entitled to a hearing over his licenses under the child support laws. *Id.* She further told him that no one had received a notice of any request for a hearing. *Id.* Kirk Gorman, the attorney for DCSS, did not inform Bayles-Fightmaster that DCSS had received a letter requesting an appeal from Andrews. *Id.* ¶ 25. Kathy Simon, a DCSS caseworker, was also aware of the letter. *Id.* ¶ 26. Comissioner Bayles-Fightmaster allegedly denied Andrews's request that his licenses be returned. *Id.* ¶ 31.

Over the next six months, multiple hearings were held in Andrews's child support case. *Id.* ¶ 28. Kirk Gorman told Andrews and his attorney that "if you want a hearing on the license suspension, file a motion." *Id.* It appears that Andrews did not file a motion.

On February 19, 2014, Gorman told Andrews that, to get his licenses back and avoid jail time, he could either pay full child support arrearage or plead guilty to three counts of contempt, pay $500 immediately and agree to pay $125 per month. *Id.* ¶ 29. Andrews pleaded guilty "under duress" to get his licenses back. *Id.* ¶ 30.

Andrews asserts that his due process rights were violated because his licenses were not returned to him on September 18, 2013 when he requested them before Bayles-Fightmaster. *Id.* ¶ 31. He contends that Bayles-Fightmaster denied him a fair hearing in violation of his Fourteenth and Fifth Amendment rights. *Id.* ¶ 32. He contends that DCSS similarly violated these rights by refusing to hold an appeals hearing before taking away his licenses. *Id.* ¶ 22. He contends that

2

Gorman contributed to his injuries by failing to inform Commissioner Bayles-Fightmaster that Andrews had submitted a request for an appeal to DCSS and that Simon "was complicit in the intentional damage to Plaintiff" because she was also aware of the letter. *Id.* ¶¶ 25, 26.

Andrews previously brought a claim under 42 U.S.C. § 1983 against defendants. First Amended Complaint (Dkt. No. 8). I granted defendants' motions to dismiss with leave for Andrews to amend. Order Granting Motions to Dismiss (Dkt. No. 38). Andrews now brings four claims against defendants seeking to redress these injuries. (Dkt. No. 47). He seeks a declaratory judgment that he was unconstitutionally denied his due process rights to a fair hearing, $200 million in damages, attorney's fees and costs.

**LEGAL STANDARD**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. Id.

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.[1]

---

[1] I recognize that defendants also seek to dismiss under Rule 12 (b)(6), and have good reasons to to do so. As the Rooker-Feldman doctrine appears to be dispositive and deprives me of jurisdiction, however, this Order focuses on it and not the other challenges to the SAC.

3

**DISCUSSION**

Andrews alleges that his constitutional rights were violated because he was not provided with a hearing in state court on the suspension of his licenses to which he asserts he was entitled under state law. He further alleges that Bayles-Fightmaster and Gorman committed fraud upon the court by misleading him as to the established law relevant to his state court proceeding. As to his § 1985 and § 1986 claims, Andrews claims that he was denied an administrative hearing as part of a conspiracy by all defendants, and that each defendant had a duty and obligation to stop the conspiracy but failed to do so. For the purpose of these motions, I take his allegations as true.

### I. THE *ROOKER-FELDMAN* DOCTRINE

Under the *Rooker–Feldman* doctrine, the United State Supreme Court is the only federal court that has jurisdiction to review final state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *see also Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003) ("a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court"). When an unsuccessful state court plaintiff attempts to set aside the state court judgment in a federal district court, "the federal suit is a forbidden de facto appeal." *Noel*, 341 F.3d at 1156. "To reverse or modify the judgment of the state court because of such errors would be an exercise of appellate jurisdiction possessed only by the Supreme Court." *Id.* (internal quotations omitted).

*Rooker–Feldman* does not bar federal jurisdiction over claims asserting that state-court judgments have been obtained by extrinsic fraud upon the court. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004). *Rooker–Feldman* applies "only when the plaintiff both asserts as [] injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Id.* at 1140. But if a plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1164. Andrews argues that *Rooker-Feldman* doctrine does not apply in this case because the state court judgment was procured by fraud.

The SAC fails to allege sufficient facts to state a plausible claim for extrinsic fraud that precludes the application of the *Rooker–Feldman* doctrine. It offers no specific facts or

1 particularized details in support of Andrews's allegation that Bayles-Fightmaster "knowingly, intentionally, and deliberately misstated established law" or that Gorman ""knowingly, intentionally, and deliberately misstated established facts." Indeed, Andrews has not contended that he paid his child support timely or challenged the basis for the suspension of his licenses under CA. Fam. Code § 17520. He did not appeal Commissioner Bayles-Fightmaster's orders. In fact, he pleaded guilty to contempt of court for failure to pay child support in order to get his licenses back. (SAC, ¶ 30.) Under these facts, his claims must be DISMISSED.

Andrews believes that he was denied a hearing on his claims in Superior Court. In light of the law governing license suspensions and Andrews's plea of guilty for failing to pay child support, I am skeptical that he can state a plausible fraud claim. But in light of his pro se status, I will allow him to amend one last time. Unless he can meet Rule 9(b)'s heightened pleading requirements for causes of action that are based in fraud, his federal claims are barred by the *Rooker–Feldman* doctrine and this Court is without jurisdiction to consider them.

## II. OTHER POTENTIAL GROUNDS FOR DISMISSAL

Although I said at the hearing that I would consider granting some of the defendsants' motions with prejudice, I have decided to allow Andrews to make whatever allegations he believes the evidence will show concerning the purported fraud of the defendants before I do so. That will insure that I do not overlook any plausible theory of relief.

That said, if Andrews is able to successfully plead around the *Rooker-Feldman* doctrine and I have jurisdiction over his claims, there are still a number of other compelling grounds for dismissal. For example, his claims appear barred by the statute of limitations. Sections 1983, 1985, and 1986 claims are subject to the state's statute of limitations for personal injury torts. *See Owens v. Okure*, 488 U.S. 235 (1989) (section 1983 claims are governed by the state's statute of limitations for personal injury torts); *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (applying California's statute of limitations for personal injury actions). In California, the current statute of limitations for personal injury torts is two years. *See* C.C.C.P § 335.1. Because Andrews's claims all relate to events that took place in March 2014 and before that he knew about at the time, and this case was not filed until 2017, his claims are likely barred by the statute of

limitations. Andrews hopes to circumvent this statute of limitations by relying on allegations of fraud upon the court. In Andrews's view, Bayles-Fightmaster and Gorman each lost the protection of the statute of limitation when they committed fraud upon the court. Oppo. at 3. Given his persistent efforts to obtain a hearing at the time and thereafter, I am skeptical that he would be able to bypass the statute of limitations.

And even if the law allows the avoidance of the statute of limitations bar due to fraud, both Bayles-Fightmaster and Gorman appear to have absolute immunity. Bayles-Fightmaster is entitled to judicial immunity for actions taken in the course of her official duties as a judicial officer, and all of the actions she is alleged thus far to have taken were within that capacity. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."). Gorman, as the government attorney in this case, is also entitled to immunity. *See Fry v. Melaragno*, 939 F.2d 832, 836-37 (9th Cir. 1991) ("agency officials such. . . agency attorneys who conduct trials and present evidence on the record to the trier of fact are absolutely immune from liability in damages for their decisions").

These are only some of the other plausible grounds for dismissal that the defendants have raised. But given Federal Rule of Civil Procedure 15's liberal amendment standard, I will grant leave once more. This will be Andrews's last opportunity.

## CONCLUSION

For the reasons discussed above, I GRANT defendants' motions to dismiss without prejudice. Andrews has 30 days to amend his complaint.

**IT IS SO ORDERED.**

Dated: December 28, 2017

William H. Orrick
United States District Judge