UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK TERRENCE ANDREWS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CONSUMER AFFAIRS, et al.,<br><br>Defendants. | Case No. 17-cv-00252-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 80, 83, 85 |

## INTRODUCTION

This is plaintiff Mark Andrews's fourth attempt to state plausible claims arising from the suspension of his business and driver's licenses because of his failure to pay child support. He alleges that defendants California Department of Consumer Affairs (which includes the California Bureau of Automotive Repair ("BAR") and the California Department of Motor Vehicles ("DMV")), the Sonoma County Department of Child Support Services ("DCSS"), Kirk Gorman (an attorney for the DCSS), Kathy Simon (a case worker for DCSS), and Superior Court Commissioner Louise Bayles-Fightmaster (who presided over his child support matter) deprived him of his property and due process rights under 42 U.S.C. § 1983, conspired to interfere with his property and due process rights under 42 U.S.C. § 1985, neglected to prevent the alleged conspiracy pursuant to 42 U.S.C. § 1986, and committed fraud in the judicial proceedings. He also attempts to assert three new causes of action against the defendants' lawyers in this case for misleading me with various pleadings.

Because the state court proceedings resolved Andrews's case and his dissatisfaction with the results should have been addressed in state court, I do not have jurisdiction to address the first

1 four causes of action pursuant to the *Rooker-Feldman* doctrine. Andrews did not have leave to plead new claims against new defendants in the Third Amended Complaint ("TAC"), and the allegations fail to state a plausible claim in any event. I have held two prior hearings on this case; further argument is unnecessary. I VACATE the hearing on March 28, 2018. Defendants' motions to dismiss are GRANTED with prejudice.

**BACKGROUND**

On November 21, 2012, Andrews was held in contempt of court for failure to make court-ordered child support payments. Third Amended Complaint ("TAC") ¶ 19 (Dkt. No. 79).[1] As a result, he received notices that his business and driver's license were suspended, effective in June and July of 2013, respectively. *Id.* ¶ 24, 25. Andrews responded by sending a letter to DCSS, requesting an administrative hearing regarding the suspensions of his licenses. *Id.* ¶ 21. Although DCSS held multiple hearings to find Andrews in contempt of court for failure to pay child support, it failed to hold the administrative hearing he requested. *Id.* ¶¶ 13, 27

On September 18, 2013, Andrews appeared before Bayles-Fightmaster and asked about the administrative hearing on his license suspension. *Id.* ¶¶ 24-25, 28. Bayles-Fightmaster told him that no one had received notice of his request for a hearing and that he was not entitled to a hearing "under the child support law." *Id.* ¶ 28. Bayles-Fightmaster also told him to file the requisite paperwork for a hearing, which Andrews claimed he had already done. *Id.* Bayles-Fightmaster then denied Andrews's request for the return of his license. *Id.* ¶ 37. Andrews alleges that, in so deciding, Bayles-Fightmaster disregarded state laws in violation of his constitutional rights. *Id.* ¶¶ 28, 37-39. He also alleges that, in the denial of an administrative hearing, defendants conspired with the "intent and sole purpose" to injure him, and that each of the defendants had the "knowledge and power" to prevent said conspiracy. *Id.* ¶¶ 46-47, 54-55.

On February 19, 2014, Gorman told Andrews that, to get his licenses back and avoid jail time, he could either pay full child support arrearage or plead guilty to three counts of contempt, pay $500 immediately and agree to pay $125 per month. *Id.* ¶ 35. Andrews pleaded guilty "under

---

[1] For purposes of this motion, I assume that the facts alleged in the TAC are true.

2

duress" to get his licenses back. *Id.* ¶ 36.

Andrews initially brought a claim against defendants for a § 1983 claim for violation of the Fifth and Fourteenth Amendment. First Amended Complaint ("FAC") (Dkt. No. 8). I granted defendants' motions to dismiss with leave for Andrews to amend pursuant to Federal Rule of Civil Procedure 15's liberal amendment standard, noting that I was skeptical that Andrews would be able to address barriers to his lawsuit, specifically the application of the *Rooker-Feldman* doctrine. Dkt. No. 38.

Andrews amended the FAC by adding 42 U.S.C. § 1983 and § 1985 claims, a claim for neglect to prevent damage pursuant to 42 U.S.C. § 1986, and a claim of fraud in the judicial proceedings. Second Amended Complaint ("SAC") (Dkt. No. 47). I again granted defendants' motions to dismiss, finding that the *Rooker-Feldman* doctrine applied to the case and that Andrews's allegations of fraud were insufficiently pleaded to overcome the doctrine's application. Dkt. No. 69. I granted Andrews leave to amend once more in order for him to attempt to adequately plead his claim of fraud.

Andrews now adds three new causes of action against defendants' attorneys for conduct in their defense of this lawsuit after it was filed that he believes misled me. Andrews seeks a declaratory judgment that he was unconstitutionally denied his due process rights to a fair hearing, $200 million in damages, and attorney's fees and costs. Dkt. No. 79. All defendants have moved to dismiss Andrews's claims. Dkt. Nos. 80, 83, 85.

**LEGAL STANDARD**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction.[2] *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter

---

[2] Defendants also seek to dismiss under Rule 12(b)(6). As discussed below, it is likely that this case would not survive a 12(b)(6) challenge. But the *Rooker-Feldman* doctrine deprives me of jurisdiction and is dispositive. Accordingly, this Order focuses on the defendants' 12(b)(1) challenge.

3

1 jurisdiction to grant the relief requested. *Id*.

2 A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pleaded in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

## DISCUSSION

### I. *ROOKER-FELDMAN*

The defendants move to dismiss Andrews's claims under the *Rooker-Feldman* doctrine, which prohibits federal courts from hearing de facto appeals of state court decisions. *See Noel v. Hall*, 241, F.3d 1148, 1163-1164 (9th Cir. 2003). Lower federal courts lack subject matter jurisdiction to hear appeals from state court decisions, meaning that they lack the legal authority to hear such cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). "[W]hen the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court," his claims are barred under *Rooker-Feldman*. *Id.* "This doctrine applies even when the challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). The *Rooker-Feldman* doctrine applies to all state court proceedings that have "ended," which means that "the state courts [have] finally resolve[d] the issue that the federal court plaintiff seeks to re-litigate in a federal forum, even if other issues remain pending at the state level." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 604 n.1 (9th Cir. 2005).

*Rooker-Feldman* does not prohibit a plaintiff from challenging a generally applicable state rule, statute, or procedure on federal or constitutional grounds. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 466 (1983). For example, a plaintiff might bring a claim asserting that a particular state procedural rule does not provide adequate due process as required by the Fifth and

4

Fourteenth Amendments. However, the *Rooker-Feldman* doctrine does bar "challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486. This means that a plaintiff cannot bring a claim alleging that the particular state rules and procedures were not followed in a certain state court proceeding. *See Mothershed*, 410 F.3d at 607 (claim that defendant "denied [plaintiff] due process" because it "did not hold its hearing within the thirty-to-sixty day time frame required by" state disciplinary proceeding rules was barred by *Rooker-Feldman*).

Andrews alleges that defendants violated his constitutional rights when he was not provided with a hearing in state court on the suspension of his licenses, which he asserts he was entitled to under state law. This type of claim, alleging that the procedures and process were inadequate in a particular state court proceeding, falls squarely under *Rooker-Feldman*. *See Mothershed*, 410 F.3d at 607 (noting that district court lacked subject matter jurisdiction pursuant to *Rooker-Feldman* because plaintiff challenged a state court's failure to hold a hearing required by state rule).

For the purposes of *Rooker-Feldman*, the proceedings regarding the suspension of Andrews's licenses "ended" with his guilty plea to three counts of contempt for failing to comply with his child support obligations. His licenses were suspended pursuant to California Family Code § 17520, which requires local child support services offices to submit the names of individuals who have failed to comply with their child support obligations to a "certified list" that is sent to all State licensing boards and that is used to suspend and revoke the licenses of any listed individuals. FC § 17520(6)(b). By pleading guilty, Andrews legally admitted that he was out-of-compliance with his child support obligations and indirectly admitted that DCSS did not make a mistake by submitting his name to the certified list. His licenses were also released back to him following his plea. There are no unresolved issues regarding the license suspensions pending in state court. Andrews should have addressed any dissatisfaction with those proceedings in state court. These issues cannot be litigated in federal court.

Andrews contends that because the state court judgment was procured by fraud, the *Rooker-Feldman* doctrine does not apply. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir.

5

2004) (noting that *Rooker–Feldman* does not bar federal jurisdiction over claims asserting that state-court judgments have been obtained by extrinsic fraud upon the court). The TAC is Andrews's second attempt to state a plausible claim for extrinsic fraud that precludes the application of the *Rooker–Feldman* doctrine, but it remains insufficient. In fact, in this second try Andrews did not amend his allegations in any substantive manner. The TAC states "9/18/2013: 5 ELEMENTS of Fraud Upon the Court: Begins Here," TAC ¶19, and what follows is a description of his disagreement with what defendants did. He did not allege any facts from which fraudulent conduct could be inferred.

In opposition, Andrews argues that the "statement of issues" found in his declaration in support of invoking judicial estoppel (Dkt No. 68) satisfies Rule 9(b)'s heightened pleading standard. Even if those allegations had been incorporated into the TAC, they would not meet the Rule 9(b) pleading standards. The facts on which Andrews relies do not add up to a plausible claim of extrinsic fraud. While Andrews is obviously unhappy with the outcome of his case, it is not apparent that there was any actionable wrongdoing on the part of the defendants. I would have to draw unreasonable inferences from the facts and the conclusory allegations of the TAC to support his claim of fraud.

*Rooker-Feldman* applies. I lack the subject matter jurisdiction to hear causes of action I - IV. Andrews pleaded guilty to contempt of court for failure to pay child support instead of appealing the decisions of the state court. He cannot relitigate these issues in federal court. Under these facts, Andrews's claims cannot survive. Accordingly, I GRANT defendants' motions to dismiss regarding the first four causes of action in the TAC with prejudice.

## II. THE NEW CLAIMS

Andrews also seeks to assert three new claims against new parties (defense counsel) for actions that allegedly occurred during their defense of this case. TAC ¶ 57-80. Under Federal Rule of Civil Procedure 15, Andrews may only amend his complaint to the extent he is given opposing party's written consent or granted leave by the court. Defendants have not consented to any amendment to add new claims, so the question is whether I have granted or would grant leave.

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when

6

justice so requires," Fed. R. Civ. P. 15(a), but it "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F. 2d 1385, 1387 (9th Cir. 1990). Courts generally weigh the following factors to determine whether leave should be granted: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously been granted leave to amend. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).

I granted Andrews leave to amend the SAC so that he could attempt to meet Rule 9(b)'s heightened pleading requirement in his allegations of fraud. Andrews's attempt to add three new claims against new defendants (defense counsel in this case) that arose after the filing of the lawsuit goes well beyond the scope of the granted leave. The essence of the claims is that Andrews disagrees with the legal positions taken by defense counsel, which in no way constitutes intentional misrepresentation, concealment, or negligent misrepresentation.

In short, when I granted leave to amend the SAC I did not allow Andrews to file new claims against new parties occurring after suit was filed. After four attempts to plead a plausible claim for relief over the past year, it is too late to launch a new attack. The new claims would obviously prejudice the defendants and the newly named defense counsel. Setting aside the merits and litigation expense, if I allowed the new claims to proceed, the defendants' lawyers would have a conflict that would likely obligate the defendants to find new counsel. The causes of action are futile; they fail to state a claim for which relief could be granted. Indeed, their lack of merit raises the question of whether the amendment was in good faith. For each of those reasons, separately and collectively, Andrews's new fifth, sixth and seventh causes of action are DISMISSED with prejudice.

**CONCLUSION**

For the reasons discussed above, I GRANT defendants' motions to dismiss the Third Amended Complaint with prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: March 26, 2018

William H. Orrick
United States District Judge